UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RONALD L. BUSH, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:07-cv-451 (WWE) |
| | : | |
| MONY LIFE INSURANCE COMPANY OF | : | |
| AMERICA; CBIZ BENEFITS & INSURANCE | : | |
| SERVICES, INC.; CBIZ INSURANCE | : | |
| SERVICES, INC. (f/k/a CBIZ BENEFITS | : | |
| AND INSURANCE SERVICES OF | : | |
| MARYLAND, INC.); ROBERT H. GARNER, | : | |
|     Defendants. | : | |

**MEMORANDUM OF DECISION ON
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

    This action arises from a canceled life insurance policy issued in favor of plaintiff Ronald L. Bush over the life of his late business partner, John Kurtz. Prior to Kurtz's death, the policy was canceled for failure to pay the annual premium. Bush has brought claims against defendant MONY Life Insurance Company of America, the provider on the insurance policy, for breach of contract, negligence, breach of the implied covenant of good faith and fair dealing, promissory estoppel/unjust enrichment and for violating the Connecticut Unfair Trade Practices Act ("CUTPA"), and claims against defendants CBIZ Benefits & Insurance Services, Inc. and Robert H. Garner ("CBIZ defendants"), as insurance agent on the policy, for breach of contract, negligence and breach of the implied covenant of good faith and fair dealing. MONY and the CBIZ defendants have filed separate motions for summary judgment, which are now pending before the Court.

    The Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332.

**BACKGROUND**

The parties have submitted briefs, a stipulation of facts and supporting exhibits, which reflect the following factual background.

Bush and Kurtz engaged in a business partnership providing market research and consulting services to financial service providers. The partnership conducted its business through Retirement Resources, Inc., a corporation owned by Kurtz. Retirement Resources' business was conducted out of the partners' respective homes – plaintiff from West Hartford, Connecticut and Kurtz from Olney, Maryland until May 2005 when he moved to Hilton Head, South Carolina. Kurtz died in July 2006.

Plaintiff is a citizen of Connecticut. Defendant CBIZ is a Maryland corporation. Defendant Garner is the executive vice president of CBIZ. Garner is a Maryland resident and an insurance agent licensed to sell insurance in Connecticut and Maryland.

Garner and Kurtz were longtime friends. In April 2003, Kurtz contacted Garner to help Kurtz and Bush obtain key man life insurance policies[1] on each other to protect themselves in the event of the other partner's death. Garner understood that the policies were meant to allow the survivor to purchase the decedent's share of the partnership from his widow. Garner provided Kurtz and Bush with two premium quotes – one to insure each partner.

Kurtz and Garner met in June 2003 to complete an application for a MONY life

---

[1] A key man life insurance policy allows a business entity to insure against the death of an important employee. See 28-174 Appleman on Insurance 2d § 174.02[C].

insurance policy covering Kurtz's life. The application identified Kurtz as the insured and included Kurtz's home address in Olney, Maryland and Kurtz's employer as Retirement Resources, Inc. in Olney. The only address included in the application was Kurtz's Olney address.

The application stated: "The Owner of the policy is the Insured unless otherwise specified in the Remarks section on page 2 of this form." In the Remarks section, a notation was made regarding Kurtz's future international travel plans in response to a question not relevant to the case. The application listed plaintiff as the beneficiary and Kurtz as the owner and insured. Plaintiff was also identified as Kurtz's business partner. Kurtz, Garner and Bush signed the application on June 12, 2003. Plaintiff testified that he read and understood the application and that he did not need to ask any questions regarding it.

After the application was submitted, MONY observed that plaintiff was identified as a business partner of the insured, but not as the owner of the policy. Where the business partner of the insured is also the beneficiary of a key man life insurance policy, the beneficiary is typically the owner of the policy and responsible for payment of the premiums. Therefore, MONY prepared an amendment to the application identifying Bush as the owner and beneficiary of the policy. MONY requested that the CBIZ defendants have Bush submit a W-9 form for information purposes. Bush testified that Garner instructed him only to complete his tax identification information on the form. Bush, therefore, left the section requesting address information blank. MONY set up its system to mail any correspondence regarding the policy to the Olney address.

MONY issued the policy on September 15, 2003 and Bush received a copy at

that point. The policy specified that premiums were due July 29 of each year, the amount of the annual premium and that the premiums "are payable to us at our Administrative Office or through any agent or other person authorized by us...." The policy further stated that it "continues in force until the Expiry Date as long as premiums are paid when due or prior to the end of the grace period." Bush paid the initial 2003 premium when the policy was issued with a check that included his West Hartford address. Garner, Bush alleges, was aware that Bush lived in Connecticut. Garner received one commission payment in the amount of $500 for his role in procuring the MONY policy and argues that he had no ongoing role or responsibilities with regard to the insurance policy.

The policy did not explicitly require MONY to send notice of premiums due, although MONY did send them out. On June 3, 2004, MONY mailed such notice to the Olney address. Kurtz received that notice and told Bush that he had received the notice. Bush wrote Kurtz a check for delivery to MONY to cover the premium. Although the premium notice contained a change of address form, neither plaintiff nor Kurtz completed it to indicate that correspondence should be sent to plaintiff. Plaintiff admitted that he had no expectation that MONY would send him a premium notice at his Connecticut address.

In late May or early June 2005, before the 2005 premium became due, Kurtz moved to Hilton Head, South Carolina. Neither plaintiff nor Kurtz informed MONY of Kurtz's address change. On May 20, 2005, Kurtz sent an email to Garner stating:

> Bob, would you please help me coordinate my change of address etc within CBIZ?

> I believe the following must be informed.
>
> NASD licenses
>
> Insurance licenses
>
> CBIZ Financial Solutions, Inc.
>
> Business Liability policy
>
> Retirement Resources 401(k) - Franklin Templeton Solo K
>
> My Rollover 401(k)
>
> Commission people in Kansas City

Kurtz did not specifically ask Garner to contact MONY, and MONY did not learn of Kurtz's address change until after his death in 2006. Garner testified that he did not believe that he was responsible for notifying MONY because he believed his duties related to MONY ceased after Garner placed the insurance policy with MONY. Garner stated that his role was to "buy, sell the policies."

On or about June 28, 2005, MONY mailed a premium due notice related to the policy to the Olney address for the 2005-2006 coverage year. Plaintiff denied that he knew that the 2005 premium was due on July 29, 2005. He further testified that he did not expect the 2005 premium notice to be mailed to him in Connecticut. Further, he did not pay the premium because he believed that Kurtz would pay it. Plaintiff did not ask Kurtz if he paid the premium, nor did Kurtz tell plaintiff that he had paid it.

On or about August 29, 2005, MONY mailed a letter to plaintiff at the Olney address indicating that the premium had not been paid and extending the deadline to pay such premium an additional 20 days. On September 28, 2005, MONY mailed a termination letter to plaintiff at the Olney address revoking coverage for failure to pay

5

the premium. Garner testified that he received copies of these letters and filed them without review.

MONY's notices and correspondence did not include in the address line a space for business name. Plaintiff contends that had the name of the business – Retirement Resources, Inc. – been included in the address, the postal service would have forwarded any correspondence to Kurtz in Hilton Head. He also alleges that MONY knew that Bush was the owner of the policy but that his address was not included in the policy.

Kurtz died on or about July 19, 2006. On January 10, 2007, plaintiff sent MONY the outstanding premiums which were returned to plaintiff. MONY never paid out the proceeds from the policy to plaintiff.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential

element of its case with respect to which it has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty Lobby, 477 U.S. at 249.

The parties first disagree as to whether Maryland or Connecticut law should govern this disagreement. Plaintiff contends that Connecticut law should apply because (1) the owner and beneficiary of the policy – that is, plaintiff – resides in Connecticut, (2) Garner and MONY are licensed to conduct business in Connecticut and (3) plaintiff completed and signed the application in Connecticut. Further, he alleges that because Kurtz left Maryland prior to his death, neither Kurtz nor Retirement Resources was located in Maryland when the policy was terminated and all communications involving Bush took place while Bush was in Connecticut. Finally, the loss to Bush took place in Connecticut.

Defendants contend that the policy was entered into with a Maryland address, that plaintiff and Kurtz used a Maryland-based broker and that MONY issued the policy in Maryland.

Federal courts sitting in diversity consult the choice of law rules of the forum state in which they sit. Bianco v. Erkins (In re Gaston & Snow), 243 F.3d 599, 601 (2d Cir. 2001). In determining which state law to apply, Connecticut courts look to the state law with the most significant relations to the matter at issue. Am. States Ins. Co. v. Allstate Ins. Co., 282 Conn. 454, 461 (2007). This analysis, derived from the Restatement (Second) of Conflict of Laws, provides that a court review (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4)

the location of the subject matter of the contract, and (5) the domicil, residence, nationality, place of incorporation and place of business of the parties.  Restatement (Second) of Conflict of Laws § 188 (1971).  Further, section 192 of the Restatement provides that a life insurance policy will be construed "by the local law of the state where the insured was domiciled at the time the policy was applied for, unless, with respect to the particular issue, some other state has a more significant relationship...."

Applying these factors, Maryland law should govern the issues of this case. Kurtz, while living in Maryland, met with Garner, a Maryland-based insurance broker, in Maryland to obtain a life insurance policy.  The policy was issued to a Maryland address and all correspondence were made through that Maryland address.  Although the beneficiary and owner of the policy was in Connecticut, the insured was in Maryland.  To the extent that Bush in Connecticut may have issued checks to MONY, he gave the checks to Kurtz to submit.  The fact that plaintiff may have signed certain documents in Connecticut and then mailed them to Maryland does not affect this conclusion.  Although the beneficiary of the policy lived in Connecticut, the other factors in favor of applying Maryland law outweigh this one.  See Melville v. American Home Assurance Co., 584 F.2d 1306 (3d Cir. 1978) (interpreting Restatement (Second) of Conflicts of Laws and applying law where insured lived and contract was entered, not the state where the beneficiary lived).

I.   **Claims Against MONY**

   A.   **First Count – Breach of Contract**

Plaintiff's First Count is for breach of contract against MONY for failing to pay the

proceeds of the policy upon Kurtz's death. Plaintiff contends that MONY breached the insurance policy when it canceled it. That cancellation, plaintiff asserts, was due to MONY's failure to mail the notice to Bush's West Hartford address.

The policy provided that it would remain in effect "as long as premiums are paid when due." The premiums were not paid; therefore MONY had a right to cancel the policy.

Plaintiff contends that MONY established a course of conduct when it provided notice to Kurtz that a premium payment was coming due. This contention is unsupported by precedent. Providing notice of premium due dates may establish a course of conduct that would require continuing to do so; one such notification, however, does not do so. See 6-40 Appleman on Insurance 2d § 40.20; Cimon v. Gaffney, 401 F.3d 1 (1st Cir. 2005); Federal Kemper Life Assurance Co. v. Ellis, 28 F.3d 1033, 1039 (10th Cir. 1994).

Plaintiff points to no set of facts that would establish why or how MONY should have known to send any information to plaintiff in Connecticut. Nor does plaintiff point to any case law to support his argument that an insurance company's process of sending notices and correspondence to the address provided in the application amounts to a breach of contract. What address would MONY send notices or correspondence to other than one provided in the application? Further, plaintiff does not plausibly argue that Garner's conduct as an insurance agent could be imputed to MONY such that Garner's being aware that Kurtz was moving to Hilton Head would require MONY to change the policy's mailing address. Finally, where the application called for the contact information of the owner if different from that of the insured, the applicants did not make

any notations with regard to plaintiff.[2]

The evidence before the Court leads to the conclusion that MONY did not breach the contract by failing to pay the benefits to plaintiff upon Kurtz's death. In light of plaintiff's failure to pay the premium, the Court will grant summary judgment on this count.

### B. Second Count – Negligence

The Second Count of plaintiff's complaint sounds in negligence. Such a claim requires plaintiff to establish a duty, a breach of that duty, causation and damages. Pendleton v. State, 921 A.2d 196, 202-03 (Md. 2007).

MONY first argues that plaintiff's negligence claims cannot stand in light of the economic loss doctrine. The economic loss doctrine provides that "when the failure to exercise due care creates a risk of economic loss only, and not the risk of personal injury, we have required an 'intimate nexus' between the parties as a condition to the imposition of tort liability." Swinson v. Lords Landing Village Condo., 758 A.2d 1008, 1016 (Md. 2000); Flagg Energy Dev. Corp. v. GMC, Allison Gas Turbine Div., 244 Conn. 126, 154 (1998). Maryland applies the economic loss doctrine only where there is an economic loss and either (1) a serious personal injury or death or (2) a duty imposed by law arising out of the contract itself. See Cooper v. Berkshire Life Ins. Co., 810 A.2d 1045, 1069 (Md. Ct. Spec. App. 2002). Despite plaintiff's arguments to the contrary, the economic loss doctrine applies under either Maryland or Connecticut law to the instant

---

[2] While plaintiff argues that Garner told him that it was not necessary for him to provide address information on the provided W-9 form, plaintiff fails to provide any evidence that MONY would have taken any address information off that form.

situation. In fact, Maryland law specifies that where an insurance company denies coverage to an insured, the insured's sole recourse is through a breach of contract action, not a negligence action. See Jones v. Hyatt Ins. Agency, Inc., 741 A.2d 1099, 1107-1108 (Md. 1999). Therefore, summary judgment is appropriate on this count.

Even if the economic loss doctrine did not apply, plaintiff has not demonstrated that MONY owed plaintiff any duty. While plaintiff argues that MONY has admitted that it owed such a duty, MONY did no such thing. Rather, MONY stated in its Memorandum of Law, "[e]ven assuming that plaintiff could demonstrate the existence of a common law duty for MONY to maintain correct address information...." This is not an admission that a duty existed. It is a concession of a point only for the sake of argument.

In addition, it cannot be concluded that MONY's failure to include plaintiff's West Hartford address in its mailings violated any duty that may have existed. As plaintiff admits, he did not expect to receive any correspondence to his address. MONY was never provided with plaintiff's address nor could MONY be faulted for using the address provided on the application that worked during the life of the policy.

As stated earlier, MONY was not required to mail any notices to Kurtz or plaintiff alerting them of the need to pay the premium. Further, plaintiff admits that he would not have paid the premium if he had received notice; instead, he assumed Kurtz would have. Finally, a reasonable jury could not conclude based on the evidence before the Court at this time – without an expert on the workings of the postal system – that had MONY used Kurtz's corporate address in its mailings to Olney, that the notice would have been forwarded to Hilton Head. In light of the foregoing, summary judgment is appropriate on this count.

## C. Third Count – Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff contends that MONY breached the implied covenant of good faith and fair dealing in failing to pay plaintiff's claim, failing to investigate that claim and, allegedly, acting purely in its own self-interest. Maryland courts do not recognize an independent cause of action for the breach of the implied covenant of good faith and fair dealing. To the extent that a contracting party has a burden of acting in good faith and dealing fairly, any claim that the party did not do so must be brought as a breach of contract claim. See Mount Vernon Props., LLC v. Branch Banking & Trust Co., 907 A.2d 373, 381-82 (Md. Ct. Spec. App. 2006); see also Swedish Civ. Aviation Admin. v. Project Mgmt. Enters., 190 F. Supp. 2d 785, 794 (D. Md. 2002) (recognizing that duties of good faith and fair dealing are parts of an action for a breach of contract).

To the extent that plaintiff argues that MONY's failure to mail notices to his West Hartford address constituted a breach of contract as a breach of the implied covenant under Maryland law, the Court has addressed this contention earlier and found that MONY was not required to mail any notices of the premium becoming due. Therefore, MONY's failure to do so was not a breach of the policy and its implied covenant of good faith and fair dealing.

Even if Connecticut law were to apply to this action, plaintiff's claim would still fail. To make a claim for a breach of the implied covenant of good faith and fair dealing in Connecticut, the plaintiff must demonstrate that the defendant acted with an improper motive. See PSE Consulting, Inc. v. Frank Mercede & Sons, Inc., 267 Conn. 279, 309-310 (2004).

Here, plaintiff alleges that MONY acted with an improper motive because he notified MONY and informed MONY of its mistakes in administering the policy, and offered it the opportunity to rectify its mistakes and to honor its contractual obligations. Further, because MONY had a financial incentive not to reinstate the policy, it declined to pay the benefits to plaintiff. This argument fails for two reasons. First, there is no evidence in the record that plaintiff contacted MONY regarding the policy until long after the policy had been terminated and Kurtz had passed away. This delay, followed by MONY's failure to reinstate the policy, does not constitute an improper motive. Similarly, without evidence that an investigation by MONY would have uncovered any facts that would have changed its decision, plaintiff's statements are mere speculation. These allegations of bad motive are conclusory and insufficient to defeat summary judgment. See Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985) (observing that conclusory statements cannot defeat a motion for summary judgment).

Summary judgment will therefore be granted on this count.

### D. Fourth Count – Promissory Estoppel/Unjust Enrichment

Plaintiff's Fourth Count asserts a claim for both promissory estoppel and unjust enrichment, despite the fact that these are distinct causes of action.

A claim for unjust enrichment in Maryland requires a plaintiff to demonstrate (1) that he conferred a benefit upon the defendant, (2) that the defendant appreciated or had knowledge of the benefit, and (3) that the defendant accepted or retained the benefit under "such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." Fischer Org. Inc. v. Landry's Seafood Rests., Inc., 792 A.2d 349, 356 (Md. Ct. Spec. App. 2002); see also Vertex, Inc. v. City of

Waterbury, 278 Conn. 557, 573 (2006).

Plaintiff argues that MONY has been unjustly enriched by its failure to pay the policy proceeds. Even if the Court were to accept that MONY benefitted by the retention of the insurance proceeds, as the Court has previously discussed, a reasonable jury could not conclude that MONY's conduct was inequitable in terminating the policy or failing to notify plaintiff of the premiums. The terms of the policy and the parties' course of conduct allows and permits MONY's behavior. Therefore, summary judgment is warranted against the unjust enrichment claim.

Plaintiff's claim for promissory estoppel against MONY also fails. As the Court has stated earlier, plaintiff's reliance on the notice was unreasonable in light of MONY having only provided one previous notice. One notice does not establish the requisite course of conduct for a claim under promissory estoppel. See 6-40 Appleman on Insurance 2d § 40.20.

### E. Fifth Count - Violation of the Connecticut Unfair Trade Practices Act

The Fifth Count charges that MONY violates CUTPA. Because the Court has found that Maryland law applies, plaintiff cannot bring a claim under Connecticut statutory law. Summary judgment is therefore appropriate on this count.

Further, even if the Court were to apply Connecticut law, the Court would nonetheless grant summary judgment as to plaintiff's CUTPA claim. Section 38a-816(6) prohibits unfair claim settlement practices performed "with such frequency as to indicate a general business practice [of] refusing to pay claims without conducting a reasonable investigation based upon all available information." Conn. Gen. Stat. § 38a-816(6)(d). First, the record is devoid of evidence that MONY's allegedly deficient investigation is a

14

part of a "general business practice" to meet a showing under CUTPA.  Second, plaintiff has failed to proffer any evidence that MONY did not conduct a reasonable investigation required under the law.  The testimony of Karen Merrill, a claims technician specialist with MONY, while admitting that MONY "really didn't do an investigation," is undermined by plaintiff's failure to suggest what a "reasonable investigation" would have been in these circumstances.  The Court cannot find fault with MONY for "not really doing an investigation" in this case because the facts were clear.  Merrill further testified that, to her knowledge, MONY had never reinstated a life insurance policy where the insured had died.  In light of the situation here, the Court finds that MONY's investigation was reasonable.

Because the Court finds that summary judgment is appropriate on all counts asserted against defendant MONY, it will grant MONY's motion for summary judgment.

## II.     Claims against CBIZ and Garner

### A.     Sixth Count – Breach of Contract

Plaintiff alleges in the Sixth Count of the Complaint that the CBIZ defendants breached the implied contract that required them to procure life insurance on plaintiff's behalf.  Specifically, this breach lay in the CBIZ defendants' failure to update Kurtz's address with MONY even while the CBIZ defendants continued to perform tasks on Kurtz's behalf after the policy took effect.

Under both Maryland and Connecticut law, an insurance broker's responsibilities to the insured end with procurement of an appropriate policy, unless there is a "special relationship" between the agent and the insured or applicant.  Sadler v. Loomis, 776

15

A.2d 25, 46 (Md. App. 2001); Precision Mech. Servs. v. T.J. Pfund Assocs., 109 Conn. App. 560, 565-66 (2008). A "special relationship" in the insurance context refers to a relationship between an insurance broker or agent and the insured that is more than the normal insurer-insured relationship. It evidences an insurance expert holding himself out as a highly-skilled expert and the insured relies upon such a representation. Sadler, 776 A.2d at 35; 12 Appleman on Insurance 2d § 86.2. The special relationship may be "demonstrated by a long term relationship of confidence, in which the agent or broker assumes the duty to render advice, or has been asked by the insured to provide advice, and the adviser is compensated accordingly, above and beyond the premiums customarily earned." Sadler, 776 A.2d at 35. The court should look to the nature of the relationship between the parties, including the nature of advice given by the broker to the insured, to determine whether there is a special relationship present. See Parker by Parker v. State Farm Mut. Auto. Ins. Co., 630 N.E.2d 567, 569-570 (Ind. Ct. App. 1994).

Courts that have addressed a "special relationship" have applied it narrowly. They have examined the parties' relationship solely in the context of the procurement of the specific insurance policy and the nature of that policy. See, e.g., Sadler, 776 A.2d 25; Parker, 630 N.E.2d at 570.

To the extent that plaintiff contends that Garner failed to properly procure the life insurance policy because MONY was never informed of plaintiff's West Hartford address, this argument is belied by the existence of the insurance policy for two years before its termination. Garner procured a policy, even if MONY was not aware of the owner's address. The premiums for the first two years were paid and correspondence were received.

16

The Court further concludes that a reasonable jury could not find that Kurtz and Garner had a "special relationship" to create an ongoing duty. Garner testified that, while he was a longtime friend of Kurtz's, he had never procured insurance on Kurtz's behalf prior to the instant case. Further, their relationship was personal, and when it was professional, the scant evidence on this point indicates that most interactions were not related to insurance matters. Once the life insurance was procured, there is no evidence that the issue of insurance ever arose again or that Garner performed any sort of interim maintenance on the policy. There is no evidence that Garner provided advice beyond the ordinary course of conduct, and, while there is no evidence in the record for what compensation the average insurance broker would receive on a similar transaction, the $500 received by Garner does not seem to evidence extra compensation.

Summary judgment is therefore appropriate on this charge.

**B.     Seventh Count – Negligence**

Plaintiff alleges that the Seventh Count, a claim for negligence, is established by (1) the duty that Garner owed to Kurtz and plaintiff through both Garner and Kurtz's "special relationship" and the change of address request when Kurtz moved; (2) Garner's failure to include plaintiff's address on the application and the supplemental W-9 and then his failure to change Kurtz's address on record with MONY; (3) the cancellation of the policy; and (4) plaintiff's inability to secure the insurance proceeds from MONY.

For the reasons addressed above, there cannot be a tort action under either Maryland or Connecticut law because the economic loss doctrine precludes such a claim. Even if the economic loss doctrine were not to apply, plaintiff's claim would still

17

fail.

The lack of a special relationship means that there was no duty on the part of the CBIZ defendants to maintain the insurance policy after its procurement. Therefore, having successfully procured a policy, the CBIZ defendants' duties to plaintiff ceased.

Plaintiff cites to Barry v. Boccarossa, 2006 Conn. Super. LEXIS 2923 (Conn. Super. Ct. Sept. 28, 2006), for the proposition that insurance agents owe a continuing duty to an insureds when they are asked to continue working on the insured's behalf. In Barry, the plaintiff was injured in an automobile accident after his automobile insurance policy had terminated because of non-payment of the premium but during a limbo period in which the insurance provider would reinstate his policy if it received his payment for the premium. Several days later, the plaintiff's father called the defendant-insurance agent and told him about the plaintiff's accident; the defendant did not inform the father about the lapsed policy. Upon a motion to strike, the court ruled that the defendant had a duty to inform the plaintiff's father of the lapse in the policy in light of the fact that the plaintiff was hospitalized.

Barry is distinguishable from the case at bar. There is no evidence in the record to indicate that plaintiff contacted Garner before the policy terminated, nor is there any evidence in the record of communications between Garner and plaintiff or Kurtz related to the policy after its procurement. The email from Kurtz to Garner does not demonstrate that Kurtz wanted Garner to change his address on the life insurance policy. A plain reading of the email evidences that Kurtz wanted Garner to change his address with regard to certain CBIZ-related in-house matters. The letter specifically instructs Garner to address matters "within CBIZ." Because the MONY life insurance

18

policy was outside CBIZ, there is no evidence that Kurtz was alluding to it. Further, although Kurtz and Garner may have had a relationship, the evidence shows, and the email further supports, that such relationship was on a wide variety of financial issues, not necessarily the policy. In light of this, summary judgment is appropriate on the Seventh Count.

    **C.    Eighth Count – Breach of the Implied Covenant of Good Faith and Fair Dealing**

The Eighth Count is a charge that the CBIZ defendants breached the implied covenant of good faith and fair dealing.

Summary judgment is appropriate on this charge for several reasons. First, as stated above, Maryland does not recognize a cause of action for this charge distinct from a breach of contract charge. Second, if Connecticut law were to apply, plaintiff proffers only conclusory statements and allegations from the complaint to oppose summary judgment. These contentions, without citations to the factual record, cannot defeat summary judgment. Without any factual support, a reasonable jury, if it were to apply Connecticut law, could not find for plaintiff on this charge.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS MONY's motion for summary judgment (Doc. #48) and GRANTS the CBIZ defendants' motion for summary judgment (Doc. #54).

Dated at Bridgeport, Connecticut, this 10th day of November, 2008.

                                              /s/
                                     Warren W. Eginton
                                     Senior United States District Judge